PER CURIAM.
Petitioners Scott Katzman, M.D. (Katz-man) and Advanced Orthopaedics, P.A. (P.A.) seek certiorari review of a trial court order denying their motion for protective order, requiring them to respond to a subpoena duces tecum, for deposition by respondent Ranjana Corp., d/b/a Lakewood Park Liquor & Pub (Ranjana). We grant the petition, quash the order, and return the cause to the trial court for further proceedings consistent with this decision.
Katzman is the treating physician for respondent Tammy Green, who was injured in a slip and fall accident at a bathroom at respondent Ranjana’s business premises. Green was referred to Katzman by another doctor, not by an attorney. Tammy and Edward Green filed suit against Ranjana for their injuries. Katz-man and employees of the P.A. provided medical services to Tammy Green pursuant to a letter of protection (LOP) with the plaintiffs and their attorneys, whereby payment for medical services would come from any recovery obtained in the lawsuit.
According to respondent Ranjana, Katz-man and the P.A. charged Tammy Green more than $150,000 in medical bills for four procedures and treatments from August, 2008 through April, 2010. Counsel for Katzman and the P.A. represented to the court at a subsequent hearing that the procedures performed on Tammy Green were two endoscopic discectomies under fluoroscopy, a thoracic fusion and a sacroiliac fusion. He represented that these types of discectomies, which took a significant amount of time, were paid for regularly by Medicare. The fusions were said to have required overnight hospital stays and were serious procedures. No contrary evidence was presented.
The Greens listed Dr. Katzman in their amended expert witness disclosures as an expert witness to testify at trial. Ranjana set Katzman and the P.A. for deposition and served on them a subpoena duces tecum, calling for production of the following information to which they objected:
2. The amounts Dr. Katzman has collected from health insurance coverage on an annual basis in 2007, 2008, and 2009 and 2010 regarding the type of surgeries as what he performed on Tammy Green, stating the number of patients for whom he performed such a procedure in each year, and the amounts received during each of those years from those health insurers.
*875 3. The amounts Dr. Katzman has collected under letters of protection received from attorneys on an annual basis in 2007, 2008, 2009, and 2010 regarding the type of surgeries as what he performed on Tammy Green, stating the number of patients for whom he performed such a procedure in each year, and the amounts received during each of those years pursuant to those letters of protection.
Katzman and the P.A. filed objections to the subpoena duces tecum and a motion for protective order, arguing that the requests sought irrelevant information, and confidential, private business and financial records which exceeded the scope of permissible discovery under Florida Rule of Civil Procedure 1.280 as well as Elkins v. Syken, 672 So.2d 517 (Fla.1996). They also argued that the requests were extremely burdensome and would require thousands of man hours and thousands of dollars to accumulate the information requested. Finally, they acknowledged that the documents requested in paragraphs 2 and 3 quoted above were being ordered as a result of this court’s decision in Katzman v. Rediron Fabrication, Inc., 36 Fla. L. Weekly D1747 (Fla. 4th DCA Aug. 10, 2011) (opinion later withdrawn and superseded with substitute opinion), 76 So.3d 1060 (Fla. 4th DCA 2011), review dismissed, 88 So.3d 149 (Fla.2012). They argued that it should not be applied to this case.
In the original Rediron opinion, this court held that a discovery order compelling information from what it labeled a “hybrid witness,” relevant to show financial bias and the reasonableness of the costs and necessity of an allegedly controversial procedure he performed, was not overbroad or unduly burdensome. Katz-man and the P.A. pointed out in this case that Rediron was the subject of a motion for rehearing in this court. They argued that the decision as it stood afforded less protection to a treating doctor who is also designated an expert for testimony, hence a “hybrid” witness as designated by the court, than that afforded under rule 1.280 to an expert witness hired solely for providing opinions in a case. They also cited rule 1.280(b)(4)(A)(iii)4., which provides in part:
An expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents.
Katzman filed an affidavit to support the motion for protective order in this case, alleging that the information sought in the subpoenas duces tecum was irrelevant and “extremely burdensome” for him to acquire. To comply, he or his office staff would have to open each and every file from 2007 through 2010 in all of the P.A.’s offices to determine if the patients received the same types of surgeries performed on Tammy Green. Files were kept alphabetically and not based on the types of procedures or surgeries performed. Then each file would have to be checked as to how much money was collected for each procedure. In many instances, phone calls would have to be made to one of the predecessor billing companies to determine how much money was actually collected for each procedure. A list would need to be complied to determine the number of surgeries performed for each year, and the same task would be required to determine how much money was collected under a LOP from attorneys. Katzman alleged that the requests would require hundreds if not thousands of hours of staff time to review all of the files and perhaps tens of thousands of dollars in labor costs. Katzman and/or the P.A. would have to hire people for this task specifically. Any attempt to comply with the requests would *876 be extremely disruptive to the staff and care of patients.
The trial court in this case heard argument on the objections and motion for protective order, and entered its order denying the motion and requiring Katzman and the P.A. to respond to the subpoena duces tecum. The trial court found that Katzman “potentially has a stake in the outcome of the litigation” because he was treating Tammy Green under a LOP, which the court said “injects the physician himself into the litigation, even though the referral was not made by a lawyer.” Also, the court said that Katzman was a “hybrid” witness as referred to in the Rediron decision, as he was both an expert and a treating physician witness. Finally, the court concluded that the original Rediron decision controlled the outcome here.
After this discovery order issued, which petitioners timely challenged by cer-tiorari petition, this court issued its opinion on motion for clarification and certification in Katzman v. Rediron Fabrication, Inc., 76 So.3d 1060 (Fla. 4th DCA 2011), review dismissed, 88 So.3d 149 (Fla.2012).[1] The Florida Justice Association filed an amicus brief asking for clarification that the opinion is limited to its unique facts. We did not expressly say that we intended to do so, but we recognize here that each case raising these issues should be decided on its own facts and circumstances.[2] This court denied rehearing and certification in Rediron, but granted clarification, withdrawing the previous opinion and replacing it with the new one.
In the new Rediron opinion, this court recited the material facts, including that the plaintiffs’ lawyer had referred the plaintiffs to Katzman for treatment of injuries after an auto accident with a vehicle owned by Rediron Fabrication, Inc. Katzman entered into a LOP agreeing to be paid for treatments from any recovery obtained in the lawsuit. Katzman was alleged to have performed a single controversial outpatient surgical procedure (per-cutaneous discectomy) within weeks of what the defendant said was a “minor auto accident.” One procedure took less than 45 minutes and Katzman billed $45,000. The procedure on the other plaintiff resulted in a $36,000 bill. Evidence was presented that the Center for Medicare and Medicaid Services had issued a national non-coverage determination finding no evidence that the procedure improved health or reduced pain. Defendant Rediron contended that a large portion of Katzman’s income was generated by recommending this particular surgical procedure to patients referred to him in litigation cases, and that he charged more for that single surgical procedure than he did in non-litigation cases.
Accordingly, Rediron sought discovery from Katzman and his P.A. as to how often he ordered discectomies over the last four years, and what he charged for them in litigation versus non-litigation cases. Katzman objected and moved for protective order. The trial court denied the motion for protective order, requiring Katzman to provide the amounts collected from health insurance coverage for four years regarding the same single surgical procedure he performed on the plaintiffs, stating the number of patients for whom he performed the procedure and the amount received during each of those years from health insurers. He was also compelled to produce information on the *877 amounts he had collected under LOPs received from attorneys during the same four years, regarding the same surgery performed on the plaintiffs, stating the number of patients for whom he performed the procedure in each year and the amounts received during each of those years pursuant to LOPs.
This court ruled in the new Rediron opinion that when a lawyer refers a patient to a doctor in anticipation of litigation, the doctor “has injected himself into the litigation.” Id. at 1064. The doctor, as a treating doctor and expert witness, was said to have a stake in the outcome of the litigation “not because of the LOP [letter of protection] — because of the referral by the lawyer. The LOP merely gives the doctor the assurance that his/her bill will be paid directly from the proceeds of any settlement or verdict. It is the direct referral by the lawyer to the doctor that creates a circumstance that would allow the defendant to explore possible bias on the part of the doctor.” Id.
Next, the opinion acknowledged Katz-man’s argument that he was being compelled to compile and produce non-existent documents, which exceeds what Florida Rule of Civil Procedure 1.280(b)(4)(A), and Elkins, 672 So.2d 517 (addressing expert ■witness discovery), would allow. The opinion did not expressly resolve this particular issue though. Instead, it proceeded to determine that the discovery sought there was relevant to issues as to whether the expert recommended an allegedly unnecessary and costly surgical procedure with greater frequency in litigation cases, and whether he overcharged for the procedure in this case. This court concluded that the discovery on those issues was appropriate and met the provision in rule 1.280(b)(4)(A)(iii)4., that an expert witness “may be required to produce financial and business records only under the most unusual or compelling circumstances.”
The trial court did not have the benefit of this court’s revised opinion in Rediron when it entered the subject discovery order now on review. If it had, it would have noted that the classification of Katz-man as a “hybrid witness” was no longer part of this court’s rationale. Also, it would have seen that portion of this court’s decision stating that it was not the LOP which injects the doctor into the litigation, as the trial court ruled here. Instead, it was the referral of the patient by the lawyer to the doctor in anticipation of litigation. That did not occur here. Another doctor referred Tammy Green to Katzman.
Further, Katzman pointed out in a motion for rehearing[3] from the trial court’s discovery order that he had sold his account receivable in this matter to a third party, prior to the date of his motion for protective order, such that he had no interest in the outcome of the case. While petitioners appear to have abandoned rehearing but are seeking certiorari in this court, this allegation should be considered by the trial court.
There are other material distinctions from Rediron which may lead the trial court to conclude that it is not controlling here. First, there were four surgical or medical procedures performed in this case on Tammy Green, contrasted with the single surgical procedure in Rediron. To the extent the trial court will need to consider on return of the case petitioners’ argument of undue burden on non-parties/petitioners, this will be an important factor. The order requiring information on four surgi *878 cal or medical procedures is far more extensive and potentially burdensome than the “limited intrusion” found in Rediron. 76 So.3d at 1064.
On the related argument by petitioners that the order requires them to produce documents and information which do not exist, we may have been remiss in Rediron in failing to evaluate that claim in greater detail. Rule 1.280(b)(4)(A)(iii)4., expressly states that an expert witness may not be compelled to compile or produce non-existent documents. Case law recognizes the same. See Elkins, 672 So.2d at 521; Sanchez v. Nerys, 954 So.2d 630 (Fla. 3d DCA 2007); Price v. Hannahs, 954 So.2d 97 (Fla. 2d DCA 2007). The trial court should consider this issue on return of the case.
Also, part of the rationale in Rediron was that the discovery pertaining to this single surgical procedure was relevant because of the evidence presented in the trial court there that the procedure did not improve health or reduce pain, and that the Center for Medicare and Medicaid Services had issued a non-coverage determination on it. As well, it was argued to the trial court that a large portion of Katz-man’s income was derived from his performing this procedure on patients referred to him in litigation cases, and that he charged more for those cases than for the procedure in non-litigation cases. Nothing of that nature was presented in this case in connection with any of the four procedures performed by Katzman and/or the P.A. Thus, Rediron may not control and require production of the same information in this case.
As the Supreme Court of Florida recognized in Elkins:
Discovery was never'intended to be used as a tactical tool to harass an adversary in a manner that actually chills the availability of information by non-party witnesses; nor was it intended to make the discovery process so expensive that it could effectively deny access to information and witnesses or force parties to resolve their disputes unjustly. To allow discovery that is overly burdensome and that harasses, embarrasses, and annoys one’s adversary would lead to a lack of public confidence in the credibility of the civil court process. The right to a jury trial in the constitution means nothing if the public has no faith in the process and if the cost and expense are so great that access is basically denied to all but the few who can afford it. In essence, an overly burdensome, expensive discovery process will cause many qualified experts, including those who testify only on an occasional basis, to refrain from participating in the process, particularly if they have the perception that the process could invade their personal privacy.
672 So.2d at 522.
We denied relief in Rediron largely because there was only one surgical procedure involved there, with a record of evidence to show it was controversial and suggest that it may have been ordered more frequently and at a higher charge in litigation eases than non-litigation cases by the expert/treating witness. There was also the referral by the lawyer to the doctor in that case, but that was only one of the circumstances leading to the conclusion that the discovery sought should be allowed. As demonstrated here, there are many grounds to distinguish this case from Rediron with its own facts and circumstances. We are not ruling in this case that Ranjana is not entitled to any discovery from Katzman and the P.A. Rather, we return this case to the trial court for consideration of what range and scope of discovery is appropriate given petitioners’ challenges identified above. We believe the trial court should have the opportunity to do this against the backdrop of the *879 clarified Rediron opinion and with this court’s decision in this case.

Petition Granted; Order Quashed; Cause returned to trial court for proceedings consistent with this opinion.

MAY, C.J., POLEN and STEVENSON, JJ., concur.

. Review was dismissed following a stipulation for dismissal by the parties pursuant to Florida Rule of Appellate Procedure 9.350(a).

. We acknowledge that there are several other petitions for writs of certiorari now pending in this court on the same or related issues, and they will be decided accordingly.

. A motion for rehearing as to a non-final order is not authorized under the Florida Rules of Civil Procedure, but the trial court may nevertheless in its discretion entertain such a motion. Commercial Garden Mall v. Success Acad., Inc., 453 So.2d 934 (Fla. 4th DCA 1984). The trial court did not rule on this motion, though.