# Third District Court of Appeal

## State of Florida

Opinion filed November 26, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-988
Lower Tribunal No. 12-31867
_____

**Orthopedic Care Center,**
Appellant,

vs.

**Devon Parks, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Lisa S. Walsh, Judge.

Fuerst Itleman David and Joseph and Christopher M. David; Kula & Samson and Elliott Kula, W. Aaron Daniel and Daniel M. Samson, for appellant.

Gordon & Doner and Cassandra Castellano-Lombard and Gary M. Paige (Davie); Burlington & Rockenbach and Adam J. Richardson (West Palm Beach), for appellees.

Before WELLS, EMAS and LOGUE, JJ.

EMAS, J.

Appellant Orthopedic Care Center ("Orthopedic"), appeals an order denying its motion for protective order. For the reasons that follow, we affirm the trial court's order.

**FACTS**

Appellee Devon Parks ("Parks") filed a personal injury action against Edna Gutierrez ("Gutierrez") in August 2012, alleging that Gutierrez was negligent and caused a car accident between the two, resulting in injuries to Park. Gutierrez hired Dr. Rolando Garcia, a physician with Orthopedic (and also a shareholder and member of Orthopedic), to conduct a compulsory medical examination of Parks.

Thereafter, Parks noticed the deposition duces tecum of Dr. Garcia for March 7, 2014. In items 16 and 17 of the schedule attached to the notice, Parks asked Dr. Garcia to bring to the deposition:

16. Any and all records which identify and document your trial testimony and deposition testimony for cases involving worker's compensation and personal injury claims during the last five (5) years. If no list of such cases is in existence and if you do not wish to create such a list, please produce all calendars, diaries, ledgers, indexes, and such other records or documents which you have in your possession or have access to which reveal cases in which you have provided testimony in deposition, arbitration, mediation, or at trial for any cases in the last five (5) years.

17. Any and all records which identify and document any and all CME, IME or examinations of any type which you have conducted during the last five (5) years on behalf of insurance companies, law firms, referral services, or other entities on their behalf. If no list of such CME, IME or examinations are in existence and if you do not wish to create such a list, please produce all calendars, diaries,

2

ledgers, indexes and such other records or documents which you have in your possession or have access to which review all CME, IME or examinations of any type in which have you have conducted during the last five years.

At his deposition, Dr. Garcia brought a list of the names of individuals in cases in which he testified – either at trial or by deposition– for the immediately-preceding three years.  The list comprised approximately 205 names.  Park's counsel asked Dr. Garcia to identify from the list those individuals for whom he provided treatment as a patient as opposed to those for whom he performed an IME or CME.[1]  The following exchange ensued:

Q.  And are these – can you just tell me briefly what percentage is plaintiff, what percentage is defense?
A. I can't.  I can tell you that generally speaking, I would say it's probably 70 percent defense, 30 percent plaintiff.

Q. In deposition or in trial?
A. Deposition and in trial.

Q. So your best recollection is that it's 70 percent defense in depositions; correct?
A. I would say so, yes, sir.

Q. And your best estimate is 70 percent defense in trial; correct?
A. That's correct, yes, sir….

Q. Okay. But I'm talking about the trial testimony, your trial testimony – do you want to look at these in the last year and tell me if you recognize the names of any of your patients in there?
A. No. I don't want to give you the wrong number. I'm going to just tell you that I cannot give you an estimate. Because I was trying to

_____

[1] IME is short for "Independent Medical Examination" and CME is short for "Compulsory Medical Examination."

answer the question, but now basically, you're asking me to be more specific and I cannot give you a specific number….

Q. I'll just – the lists of the trial testimony that you just gave me, can you just look at it and tell me if you recognize which of those people that you recognize – recall as being patients that you treated and had an ongoing relationship with them as a treating physician? That's all I want to know….

THE WITNESS: Yeah, and I've mentioned several times, just by looking at the names, I wouldn't be able to answer that.

Dr. Garcia explained that he could not identify what names on the list were patients he treated (versus individuals on whom he performed IME/CME exams) just by looking at the names because "[he wouldn't] know the extent of the treatment of a specific patient, and in addition to that, usually the trials are regarding patients that may have been treated in the past, so it could have been a while." Dr. Garcia approximated that on a weekly basis he saw approximately 100 patients and completed about five CMEs.

On March 13, 2014, following Dr. Garcia's deposition, Park's counsel followed up with a subpoena for deposition (the "Subpoena") directed to a representative of Orthopedic[2] with the most knowledge regarding:

1. Which of the persons or cases on the lists provided by Dr. Garcia, attached as Exhibits A & B, were actual patients (not IME exams) of Dr. Garcia.[3]

_____

[2] Orthopedic was not a party to the proceeding below.
[3] The Subpoena also requested the appearance of the witness with the most knowledge regarding: "Which of the persons or cases on the lists provided by Dr. Garcia, attached as Exhibit A involve depositions given by Dr. Garcia in worker's

Thereafter Orthopedic filed its Objection and Motion for Protective Order of Non-Party, asserting that: (i) the Subpoena imposed overly burdensome obligations beyond the scope of Florida Rules of Civil Procedure 1.280 and 1.310, and in violation of Florida law pursuant to Elkins v. Syken, 672 So. 2d 517 (Fla. 1996); and (ii) the Subpoena would require Orthopedic to violate section 456.057, Florida Statutes (2013), which prohibits the disclosure of nonparty compulsory medical examination data without prior notice to all of the affected nonparties.

Parks responded, arguing that (i) he was entitled to know the percentages of work Dr. Garcia performed as a retained expert for plaintiffs and as a retained expert for defendants, as this information went to Dr. Garcia's potential bias; (ii) the Subpoena did not place an undue burden or expense on Orthopedic; and (iii) the discovery request would not result in a violation of section 456.057 because it did not seek any information regarding the patient's medical condition or treatment.

After a hearing, the trial court determined that Rule 1.280(b)(5)(A)(iii) was intended to permit discovery regarding testimony given by an expert in their capacity as a retained expert, and that a list which combined cases in which Dr. Garcia gave testimony as an expert with cases in which Dr. Garcia gave testimony

---

compensation cases, and which were depositions given in personal injury/liability cases." The trial court, however, denied this request, and this issue is not before us on appeal.

as a treating physician did not comply with the underlying purpose of the rule. Thus, the court found that the rule permitted Parks to discover which of the individuals listed involved cases in which Dr. Garcia served as a retained expert (as opposed to a treating physician). The trial court entered its order overruling Orthopedic's objection to item one of the Subpoena and Orthopedic appealed.

**ANALYSIS**

A "trial court has broad discretion in determining whether a protective order is warranted under the circumstances." Smith v. S. Baptist Hosp. of Fla., 564 So. 2d 1115, 1118 (Fla. 1st DCA 1990). Therefore, while the court's factual findings will not be disturbed absent an abuse of discretion, Alvarez v. Cooper Tire & Rubber Co., 75 So. 3d 789, 793 (Fla. 4th DCA 2011), we review *de novo* the court's interpretation and application of Rule 1.280 and section 456.057, Pino v. Bank of N.Y., 121 So. 3d 23, 31 (Fla. 2013)

On appeal, Orthopedic contends that Dr. Garcia complied with rule 1.280 and Elkins by:

1) Producing a list of all cases during the preceding three-year period in which he testified either at trial or by deposition, either as a retained expert witness or a treating physician; and

2) Explaining his general litigation experience and giving an approximation of his work for both defendants and plaintiffs.

Orthopedic argues that further bias-discovery—in the absence of any suggestion that Dr. Garcia was falsifying, misstating or obfuscating—is unauthorized under rule 1.280 and Elkins.  It further asserts that the ordered discovery violates section 456.057, which protects against the disclosure of patient information.  We find neither argument persuasive.

**I.**     ***Elkins* and Rule 1.280**

With regard to expert witness discovery, Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii) provides:

> A party may obtain the following discovery regarding any person disclosed by interrogatories or otherwise as a person expected to be called as an expert witness at trial:
>
> 1. The scope of employment in the pending case and the compensation for such service.
> 2. The expert's general litigation experience, **including the percentage of work performed for plaintiffs and defendants**.
> 3. **The identity of other cases**, within a reasonable time period, **in which the expert has testified by deposition or at trial**.
> 4. An approximation of the portion of the expert's involvement **as an expert witness**, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness; however, the expert shall not be required to disclose his or her earnings as an expert witness or income derived from other services.
>
> (Emphasis added).

In Elkins, 672 So. 2d at 521, the Florida Supreme Court approved this Court's decision in Syken v. Elkins, 644 So. 2d 539 (Fla. 3d DCA 1994), and

7

adopted the district court's established criteria governing the discovery of financial information from expert witnesses:

1. The medical expert may be deposed either orally or by written deposition.
2. The expert may be asked as to the pending case, what he or she has been hired to do and what the compensation is to be.
3. The expert may be asked what **expert work he or she generally does**. **Is the work performed for the plaintiffs, defendants, or some percentage of each**?
4. The expert may be asked to give an approximation of the portion of their professional time or work devoted to service **as an expert**. This can be a fair estimate of some reasonable and truthful component of that work, such as hours expended, or percentage of income earned from that source, or the approximate number of IME's that he or she performs in one year. The expert need not answer how much money he or she earns as an expert or how much the expert's total annual income is.
5. The expert may be required to identify specifically **each case in which he or she has actually testified, whether by deposition or at trial**, going back a reasonable period of time, which is normally three years. A longer period of time may be inquired into under some circumstances.
6. The production of the expert's business records, files, and 1099's may be ordered produced only upon the most unusual or compelling circumstance.
7. The patient's privacy must be observed.
8. An expert may not be compelled to compile or produce nonexistent documents.

Id. at 546 (emphasis added).[4]

Importantly, the Florida Supreme Court found "that the district court's opinion strikes a reasonable balance between a party's need for information

_____

[4] The court also directed that these criteria be made part of the commentary to Florida Rule of Civil Procedure 1.280.

covering an expert witness's potential bias and the witness's right to be free from burdensome and intrusive production requests." Elkins, 672 So. 2d at 522.

Thus, both Elkins and rule 1.280 focus on the discovery to be provided by "the expert," and require "the expert" to specifically identify those cases in which he has testified by deposition or trial. It logically follows from this that a party is entitled to discover those cases in which the expert testified **as an expert**. In fact, the third and fourth criteria identified in Elkins (and the second and fourth criteria set forth in the rule) expressly contemplate such discovery. Though Dr. Garcia provided an expansive list of persons or cases in which he testified by deposition or trial, covering testimony provided both as a retained expert and as a treating physician, he was unable to differentiate those cases in which he testified "as an expert" from those cases in which he testified as a treating physician. Such a distinction is relevant and could prove significant in assessing potential bias.

Dr. Garcia initially testified at his deposition that of the list of 205 cases in which he testified or gave a deposition, approximately 70% were on behalf of the defense and 30% were on behalf of the plaintiff. Later in the deposition, however, when asked to identify only those cases in which he gave testimony as an expert witness (rather than testimony given as a treating physician), Dr. Garcia was unable to do so, eventually disclaiming the original estimated percentages of plaintiff and defense work. As a result, the trial court determined that the Parks

was entitled to depose the person from Orthopedic with the most knowledge to identify which names or cases on the list involved Dr. Garcia's testimony as an expert witness (as opposed to testimony as a treating physician). We find no abuse of discretion in the trial court's factual determinations in this regard. We also conclude that the trial court correctly applied rule 1.280 and the underlying purpose of the rule in light of the factual circumstances presented.

As this court has previously recognized, "Florida case law and Florida Rule of Civil Procedure 1.280 . . . provide 'reasonable latitude for inquiry about the extent of a trial expert's alignment with one side, or another.'" Sanchez v. Nerys, 954 So. 2d 630, 631 (Fla. 3d DCA 2007). We do not find an abuse of discretion in the trial court's decision to deny Orthopedic's motion for protective order where Parks' discovery requests sought nothing more than a differentiation between Dr. Garcia's relevant work "as an expert" and his other work as a treating physician.[5]

Given Dr. Garcia's inability to differentiate the names on the list (retained expert testimony v. treating physician testimony), it might well be inaccurate for

---

[5] This is not to suggest that an expert's work as a treating physician could never be relevant or discoverable. For example, where the expert is considered a "plaintiff's expert" the defense might properly seek discovery regarding the number and percentage of cases in which the plaintiff's attorney refers a client to the expert for purposes of medical treatment. See e.g., Steinger, Iscoe & Greene, P.A. v. Geico Gen. Ins. Co., 103 So. 3d 200 (Fla. 4th DCA 2012). We also do not ignore the fact that a plaintiff's treating physician may often be characterized as a "hybrid" expert, in that such a witness may be providing testimony on the plaintiff's medical history and course of treatment, while also offering opinions regarding future medical treatment and permanency.

Dr. Garcia to be permitted to maintain, and to require Parks to accept, the equivocal and undifferentiated estimates provided by during Dr. Garcia's deposition. A single hypothetical should clarify this point:

Assume that the list provided by Dr. Garcia contained a total of 200 cases (for ease of calculation) in which Dr. Garcia provided testimony either as a retained expert witness or as a treating physician.

Assume that in 30 percent of those cases (60 cases) Dr. Garcia provided testimony for the plaintiff, either as a retained plaintiff's expert or as a treating physician. The remaining 70 percent (140) would represent cases in which Dr. Garcia testified as a retained defense expert. One could conceivably argue that these percentages (70 percent defense, 30 percent plaintiff) reveal some potential bias or alignment as an expert witness.

Assume that when the list is differentiated (i.e., broken down to distinguish between testimony given as a retained plaintiff's expert versus testimony given as a treating physician) it is determined that of the 30 percent (60 cases) in which Dr. Garcia provided testimony "for the plaintiff," every single one of those 60 cases involved testimony provided by Dr. Garcia as a treating physician. In other words, 100 percent of the cases in which Dr. Garcia testified "for the plaintiff" was testimony provided as a result of his relationship as the plaintiff's treating

physician, and there were no cases on the list in which he testified "for the plaintiff" as a result of being retained as an expert witness for the plaintiff.

This would alter significantly the percentages: instead of a 70/30 split, we would have a 100/0 split, because the hypothetical differentiated list reveals that in every single case in which Dr. Garcia testified **as a retained expert** (140 out of 200 cases), he did so only on behalf of the defense. The remaining 60 cases involved testimony provided not as a plaintiff's retained expert, but rather as a result of treatment and care provided as each plaintiff's treating physician. Though of course we have no way of knowing whether or how the actual percentages will be affected by this differentiation, it is clear that Parks was entitled to seek this information to further discover the extent of any potential bias.

We also find no merit in Orthopedic's assertion that Parks' request would require it to create a document that does not exist. See Orkin Exterminating Co. v. Knollwood Props., Ltd., 710 So. 2d 697 (Fla. 5th DCA 1998).

## II. Section 456.057, Florida Statutes

Finally, Orthopedic argues that the order violates section 456.057, Florida Statutes (2014), which protects against the disclosure of patient information. This statute concerns the control of patient records and provides:

> Except as otherwise provided in this section …, such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative, or other health care practitioners involved in the

12

patient's care or treatment, except upon written authorization from the patient. However, such records may be furnished without written authorization under the following circumstances:

. . .

3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.

§ 456.057(7)(a)(3), Fla. Stat. (2014). We find that the order at issue does not implicate section 456.057 as it does not require Orthopedic to provide any reports or any information regarding the patients' medical conditions. Further, it was Dr. Garcia who provided Parks with the names of certain patients, by producing the undifferentiated list at his deposition. The trial court's order simply requires Orthopedic to review the list previously provided by Dr. Garcia, and to differentiate the names of patients treated by Dr. Garcia from the names of individuals upon whom Dr. Garcia performed an IME or CME as a retained expert.

Accordingly, we affirm the order denying Orthopedic's motion for protective order.

Affirmed.