On Motion FOR Claeification AND CERTIFICATION
PER CURIAM.
Petitioner has moved for rehearing, rehearing en banc, clarification, and for certification of a question of great public importance. The Florida Justice Association has filed an amicus brief raising new issues that were not brought by the parties. The amicus acknowledges that this court cannot decide the case based on its newly-raised arguments. Nevertheless, it asks that this court clarify that the opinion is limited to the unique facts of this case.
We decline to rehear this issue m banc and deny petitioner’s motion for rehearing as it does not identify any point of law or fact that this court overlooked or misapprehended. Fla. R.App. P. 9.330(a). We also deny the motion for certification. We grant clarification, withdraw the previous opinion and issue the following in its place.

Posture

Scott Katzman, M.D., and his medical practice, Advanced Orthopaedics, P.A. (collectively Dr. Katzman), petition for a writ of certiorari from a trial court order denying their motion for a protective order. Dr. Katzman, a non-party to the underlying personal injury suit, contends that the defendant’s discovery requests are over broad, unduly burdensome, and beyond what is authorized from an expert witness under Florida Rule of Civil Procedure 1.280(b)(4)(A).
The trial court’s discovery order is narrowly tailored and does not unduly intrude into the private financial affairs of the non-party. We conclude that the trial court did not abuse its broad discretion in controlling discovery and deny the petition.

Facts

Plaintiffs George Martin and Allison Minjares were involved in an auto accident with a vehicle owned by defendant Rediron Fabrication, Inc. and filed suit seeking damages for their alleged injuries. Plaintiffs’ lawyer referred them to Dr. Katz-man. Katzman entered into a letter of protection agreement (LOP) agreeing to be paid for treating the plaintiffs from any recovery obtained in the lawsuit.
Katzman performed an allegedly controversial outpatient surgical procedure[1] on *1062 the plaintiffs. Katzman performed the procedure on both plaintiffs within weeks of what defendant refers to as a “minor auto accident.” One procedure took less than 45 minutes, and Katzman billed more than $45,000. He billed more than $36,000 for the second plaintiff. In 2008, the Center for Medicare and Medicaid Services issued a national non-coverage determination finding no evidence that this procedure improves health or reduces pain. Defendant believes that a large portion of Katzman’s income is generated by recommending this procedure for patients referred to him in litigation cases and that he charges more for the procedure in litigation cases than in nonlitigation cases.
Rediron sought discovery from Katzman regarding how often he has ordered dis-cectomies over the past four years and what he has charged in litigation and non-litigation cases. Katzman objected, moved for a protective order, and argued that the discovery is overbroad and exceeds the financial discovery that is permitted from retained experts under the discovery rules and Elkins v. Syken, 672 So.2d 517 (Fla. 1996).
After two hearings, the circuit court ruled that defendant must respond to the following requests:
6. Dr. Katzman will provide the amounts he has collected from health insurance coverage on an annual basis in 2007, 2008, 2009 and 2010 regarding the type of surgery as what he performed on George Robert Martin and Allison Minjares, stating the number of patients for whom he performed such a procedure in each year, and the amounts received during each of those years from those health insurers.
7. Dr. Katzman will provide the amounts he has collected under letters of protection received from attorneys on an annual basis in 2007, 2008, 2009, and 2010 regarding the type of surgery as what he performed on George Robert Martin and Allison Minjares, stating the number of patients for whom he performed such a procedure in each year, and the amounts received during each of those years pursuant to those letters of protection.
This petition followed.

Jurisdiction

Certiorari jurisdiction does not lie to review every erroneous discovery order. Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). “[Rjeview by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.” Id. (citing Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987)).
This court generally will not review orders denying a party’s over-breadth or burdensomeness objections to discovery. See Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1200 (Fla. 4th DCA 2000); Cmtys. Fin. Co. v. Bjork, 987 So.2d 231 (Fla. 4th DCA 2008).
The order at issue in this case, however, requires production of otherwise private financial information from a non-party, which has no right to appeal.
Petitioner alleges that the order is over-broad, unduly burdensome, and that it departs from the essential requirements of Elkins and rule 1.280. To this extent, petitioner makes a threshold jurisdictional showing that the trial court’s order compels production of cat-out-of-the-bag dis *1063 covery. Martin-Johnson, 509 So.2d at 1100. See also Price v. Hannahs, 954 So.2d 97, 100 (Fla. 2d DCA 2007).

Analysis

In Syken v. Elkins, 644 So.2d 589 (Fla. 3d DCA 1994), approved, 672 So.2d 517 (Fla.1996), experts retained to provide compulsory medical examinations were ordered to produce expansive discovery of their private financial information, including tax returns. The information was sought to show what should have been fairly obvious to most, that the expert may be biased in favor of the retaining party because he or she has a financial incentive. Trial courts, however, permitted broad, wholesale discovery into the private financial affairs of the experts far beyond what was reasonably necessary to fairly litigate the potential for bias. The problem with such invasive and harassing discovery was expanding and threatened to chill the willingness of experts to become involved in litigation.
The Third District Court of Appeal fashioned a methodology that balanced a party’s need to obtain financial bias discovery from an expert with the need to protect the privacy rights of experts. The Florida Supreme Court approved of the Third District’s criteria and, subsequently, the methodology was codified in Florida Rule of Civil Procedure 1.280(b)(4)(A).[2]
Several years following Elkins, the court decided Allstate Insurance Co. v. Boecher, 733 So.2d 993 (Fla.1999), which arose from insurance litigation. The insured sought to discover from the insurance company the extent of its financial relationship with the expert witness that the insurance company intended to call at trial to dispute causation. The court held that the Elkins limitations could not be used to shield the discovery sought from the party regarding its financial relationship with the expert. The court strongly condemned the insurance company’s attempt to hide discovery of its financial relationship with the expert; “Only when all relevant facts are before the judge and jury can the ‘search for truth and justice’ be accomplished.” Id. at 995 (emphasis in original) (citation omitted). Because the discovery in Boecher sought information from the party regarding its relationship with a particular expert, the court found that the analysis changed and the balance of interests shifted in favor of allowing the discovery. Id. at 997.
The situation presented in this case, which we have seen recurring, in- *1064 volves a physician who treats a patient who was involved in an auto accident and referred by a lawyer. The physician enters into a letter of protection (LOP) agreement and agrees to obtain payment from any recovery that is obtained in the law suit. In one respect, the physician is a “fact” witness, a treating physician.
In another respect, the same physician often provides expert opinions at trial regarding the permanency of injuries, prognosis, the need for future treatment, etc. The physician is not merely a witness retained to give an expert opinion about an issue at trial. Likewise this is not a typical treating physician that a patient independently sought out. A lawyer referred the patient to the physician in anticipation of litigation and therefore the physician has injected himself into the litigation. This witness potentially has a stake in the outcome of the litigation not because of the LOP — because of the referral by the lawyer. The LOP merely gives the doctor the assurance that his/her bill will be paid directly from the proceeds of any settlement or verdict. It is the direct referral by the lawyer to the doctor that creates a circumstance that would allow the defendant to explore possible bias on the part of the doctor.
As in Boecher, the circumstances in the present situation are different from that in Elkins, and the balance of interests is different.
Katzman argues that he is an “expert” within the meaning of the rule and that financial bias discovery is therefore limited. See Fla. R. Civ. P. 1.390(a) (defining “expert” as the term is used in the discovery rules as “one possessed of special knowledge or skill about the subject upon which called to testify”). Katzman alleges that he is being compelled to compile and produce non-existent documents which exceeds what Elkins and rule 1.280(b)(4)(A) allow.
The parties do not dispute that Katz-man, who has been listed as an expert for trial, qualifies as an expert under the rule. Katzman is expected to provide expert opinion testimony as a witness in this case, but Katzman is also a treating physician who has provided treatment under a letter of protection agreement.
Elkins and rule 1.280(b)(4)(A) limit general financial bias discovery sought for impeachment of a retained expert. Petitioner relies on Price v. Hannahs, 954 So.2d 97 (Fla. 2d DCA 2007), but in that case the trial court had granted general financial bias discovery in excess of that permitted by the rule. Boecher makes clear that Elkins was not intended to shield from discovery potentially relevant'information.
In this case, the discovery that is sought is not relevant merely to show that the witness may be biased based on an ongoing financial relationship with a party or lawyer. We agree that Elkins discovery should generally provide sufficient discovery into such financial bias. The discovery here is relevant to a discrete issue, whether the expert has recommended an allegedly unnecessary and costly procedure with greater frequency in litigation cases, and whether the expert, as a treating physician, allegedly overcharged for the medical services at issue in the lawsuit. The limited intrusion into the financial affairs of the doctor in this case is justified by the need to discover case-specific information relevant to substantive issues in the litigation, i.e., the reasonableness of the cost and necessity of the procedure. In our view, it meets the requirement of “unusual and compelling circumstances.”
We have previously recognized that a defendant may discover from a medical provider billing information regarding this particular procedure. Columbia Hosp. *1065 (Palm Beaches) Ltd. P’ship v. Hasson, 33 So.3d 148 (Fla. 4th DCA 2010). In Hasson, we recognized that such discovery is permitted as it is calculated to lead to the discovery of admissible evidence regarding the reasonableness of medical expenses, that is, whether the health care provider “charges non-litigation patients a lower fee for the same medical services.” Id. at 150. The fact the medical provider in this case is also expected to provide an “expert” opinion at trial changes nothing.
We reject petitioner’s attempt to create a per se rule that all “financial” discovery from any “expert,” regardless of whether the expert also is a treating doctor, is always limited strictly to those matters set forth in rule 1.280(b)(4)(A).
Trial courts have broad discretion in controlling discovery and in issuing protective orders. Rojas v. Ryder Truck Rental, Inc., 641 So.2d 855, 857 (Fla.1994). Trial courts should not allow discovery to become a tactical litigation weapon to harass the witness, the party, or the law firm(s). See Fla. R. Civ. P. 1.280(b)(4)(C) (allowing trial courts to require the party seeking discovery from an expert to pay a fair part of the fees and expenses reasonably incurred by the expert).
In this case, the trial court did not abuse its broad discretion when it permitted the limited discovery at issue, and the discovery order does not depart from the essential requirements of law.

Petition Denied.

POLEN, TAYLOR and LEVINE, JJ. concur.

. Katzman performed a "percutaneous dis-cectomy” which involves removal of herniated disc material that presses on a nerve root or the spinal cord. Defendant explained that insurance companies and third party payors *1062 have questioned the need for and efficacy of this procedure.

.In relevant part, the rule provides;
(iii) A party may obtain the following discovery regarding any person disclosed by interrogatories or otherwise as a person expected to be called as an expert witness at trial:
1. The scope of employment in the pending case and the compensation for such service.
2. The expert's general litigation experience, including the percentage of work performed for plaintiffs and defendants.
3. The identity of other cases, within a reasonable time period, in which the expert has testified by deposition or at trial.
4. An approximation of the portion of the expert’s involvement as an expert witness, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness; however, the expert shall not be required to disclose his or her earnings as an expert witness or income derived from other services. An expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents. Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and other provisions pursuant to subdivision (b)(4)(C) of this rule concerning fees and expenses as the court may deem appropriate.
Fla. R. Civ. P. 1.280(b)(4)(A)(iii).