DAMOORGIAN, J.
The law firm, Steinger, Iscoe & Greene, and its client, Tiffany Washington, petition this court for a writ of certiorari to quash a trial court order that compelled the firm to produce discovery pertaining to the law firm’s relationship with a treating physician. For the reasons hereinafter discussed, we grant the petition and remand for further proceedings. This case presents a complicated web of interests, involving the confidences of doctors and their patients, and attorneys and their clients. Those interests must be weighed against the right of a party in a personal injury action to discover the nature and extent of the relationship between a treating physician and counsel for the party calling the doctor.
By way of background, the law firm represents Washington, the plaintiff in a claim against GEICO for uninsured motorist coverage. During pre-trial discovery, GEICO propounded standard expert interrogatories to plaintiff. Washington objected on the grounds that the interrogatories were unduly burdensome, and, in any event, she had not retained any experts. GEICO filed a motion to compel better answers to the interrogatories. At the hearing on the motion, plaintiffs counsel admitted that some of the treating physicians would render expert opinions on matters such as causation, permanency, and future damages. The trial court granted the motion.
*203 A series of motions and hearings followed, which led to GEICO seeking to depose the law firm’s office manager in order to obtain information, including documents, relating to the nature and extent of the relationship between the law firm and the treating physicians. These are the same physicians who plaintiff admitted would also be rendering expert opinions. All of the requests sought information concerning the financial dealings between the law firm and plaintiffs health care providers. The production requests included: (1) all records of payments by the firm to the four medical providers; (2) all “Letters of Protection” to those providers; (8) all phone records between the firm and the four providers; and (4) all deposition and trial transcripts of those individuals or entities in the firm’s possession. The firm moved for a protective order, arguing among other things that the request invaded the privacy of non-party patients and violated the attorney-client privilege of the law firm’s former clients. Additionally, production of such documents would require extensive manual review of thousands of confidential files, which would be burdensome and expensive.
The trial court denied the motion for protective order as to categories one, two and four, but allowed the firm to redact the names of clients in cases that settled or where no lawsuit was filed. Any documents subject to privilege objections were to be produced under seal with a privilege log provided to the court. This petition follows.
Because the order compels “production of otherwise private financial information [and records] from a non-party [who] has no right to appeal” from a final order, we have jurisdiction. Katzman v. Rediron Fabrication, Inc., 76 So.3d 1060, 1062-68 (Fla. 4th DCA 2011).
In the context of a personal injury action, this case raises two significant issues: (1) when is a treating physician an expert subject to expert interrogatories; and (2) when does the nature of the relationship between a law firm and a treating physician raise the spectre of financial bias sufficient to warrant discovery from the law firm and discovery beyond that generally allowed from an expert.
The evidence code allows a party to attack a witness’s credibility based on bias. § 90.608(2), Fla. Stat. (2012). A treating physician, like any other witness, is subject to impeachment based on bias. See Tobin v. Leland, 804 So.2d 390, 394 (Fla. 4th DCA 2001)(identifying some areas of bias that should be subject to inquiry including “involvement in the instant litigation or other pending litigation involving the parties [and] past or present employment relationship[s]”). Thus, discovery aimed at producing evidence of a treating physician’s bias is permissible.
For purposes of uncovering bias, we see no meaningful distinction between a treating physician witness, who also provides an expert opinion (the so-called “hybrid witness”), and retained experts.[1] As Judge Torpy explained in his concurrence *204 in State Farm Mutual Automobile Insurance Co. v. German, 12 So.3d 1286 (Fla. 5th DCA 2009):
[A] treating physician who devotes a substantial portion of his or her practice to expert testimony on behalf of plaintiffs might have a bias towards plaintiffs just as a retained expert, and inquiry at trial to expose that potential bias is permitted. It logically follows that pretrial discovery is permissible to uncover evidence of bias for all the same reasons that discovery on any trial issue is permitted. The extent to which discovery is permitted on this issue is a function of balancing its importance against the burden of providing the discovery.
Id. at 1287 (Torpy, J., concurring). Rule I.280(b)(5)(A)(iii)[2] derives from Elkins v. Syken, 672 So.2d 517, 521-22 (Fla.1996), and limits financial bias discovery from retained experts. While the rule was drafted to protect retained experts only, and was not intended to limit discovery from a treating physician, a treating physician expert is entitled to similar protection from overly intrusive general financial bias discovery.
Typically, “the correct balance [for bias discovery from the so-called hybrid witness] is the same balance contained in the rule for all other experts because there is no logical distinction between treating physicians and retained experts for purposes of uncovering this type of information.” German, 12 So.3d at 1288 (Torpy, J., concurring). Thus, under ordinary circumstances, a defendant may discover from a plaintiffs treating physician the type of general financial bias information set out in Rule 1.280(b)(5)(A)(iii).[3]
We do not suggest that all financial discovery from a physician who also serves as an expert in litigation must always be strictly limited to those matters listed in Rule 1.280(b)(5)(A). We stress that the limitations on financial bias discovery from expert witnesses cannot be used as a shield to prevent discovery of relevant information from a material witness — such as a treating physician. The rule limits discovery of the general financial information of the witness where it is sought solely to establish bias. However, trial courts have discretion to order additional discovery where relevant to a discrete issue in a case. See Rediron, 76 So.3d at 1064-65. In each case, the trial court must balance the need for the discovery against the burden placed upon the witness. Katzman v. Ranjana Corp., 90 So.3d 873, 876 (Fla. 4th DCA 2012)(recog-nizing “that each case raising these issues should be decided on its own facts and circumstances”).
Here, we are confronted with a discovery request to a non-party law firm, seeking bias discovery regarding the firm’s ongoing relationship with plaintiffs treating health care providers. GEICO argues that it and its legal counsel have long been required to provide similar discovery and to maintain records of past dealings with experts. See Allstate Ins. Co. v. Boecher, *205 788 So.2d 998, 997-98 (Fla.l999)(pertaining to discovery from the insurance company regarding its relationship with an accident reconstruction expert). GEICO argues that fairness requires that when a plaintiffs law firm maintains an ongoing relationship with a treating physician, the insurer should be entitled to delve deeper into that relationship. In other words, “what’s good for the goose is good for the gander.”
As the court explained in Boeeher, the rules generally allow a party broad discovery regarding “ ‘any matter, not privileged, that is relevant to the subject matter of the pending action.’ ” Id. at 995 (quoting Fla. R. Civ. P. 1.280(b)(1)). The discovery need not be admissible at trial but must be “‘reasonably calculated to lead to the discovery of admissible evidence.’ ” Id. The court explained that the limitations it placed on financial discovery from experts in Elkins derived from balancing “the probative value of the information sought against the annoyance and embarrassment to the expert physicians caused by the discovery requests.” Id. at 996 (citing Elkins, 672 So.2d at 521-22). Where the discovery was directed, not at the retained expert, but at the party, the court concluded:
To the extent that we strove in Elkins to achieve a balance between the need for information concerning potential bias and the right of the expert to be free from intrusive requests, the analysis of the competing interests in this case is qualitatively different. We conclude that where the discovery sought is directed to a party about the extent of that party’s relationship with a particular expert, the balance of the interests shifts in favor of allowing the pretrial discovery.
Id. at 997.
Similarly, the balancing of interests is different under the circumstances presented here. We conclude that where there is a preliminary showing that the plaintiff was referred to the doctor by the lawyer (whether directly or through a third party) or vice versa, the defendant is entitled to discover information regarding the extent of the relationship between the law firm and the doctor. We find the circumstances analogous to those presented in Boeeher where the Florida Supreme Court observed:
The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing. A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness’s financial incentive to continue the financially advantageous relationship.
Any limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process.... [W]e take “a strong stand against charades in trials.” To limit this discovery would potentially leave the jury with a false impression concerning the extent of the relationship between the witness and the party by allowing a party to present a witness as an independent witness when, in fact, there has been an extensive financial relationship between the party and the expert. This limitation thus has the potential for undermining the truth-seeking function and fairness of the trial.
Boeeher, 733 So.2d at 997-98 (citation omitted).
*206 Here, the law firm is not a party .to the litigation and the record currently before us does not establish that the doctor in this situation has a financially beneficial relationship with the law firm. If there is such a relationship, past or present, the jury is entitled to know the extent of the financial connections between the doctor and the law firm. The existence of referral arrangements is clearly a permissible ground for impeachment of a doctor. Flores v. Miami-Dade Cnty., 787 So.2d 955, 958-59 (Fla. 3d DCA 2001) (holding that trial court properly allowed defendant to cross examine plaintiffs treating physician regarding referrals in that case, as well as in other cases). Thus, if a referral is shown to exist, discovery from the law firm regarding the extent of the relationship may be calculated to lead to the discovery of admissible evidence.
Normally, discovery seeking to establish that a referral has occurred should first be sought from the party, the treating doctor, or other witnesses — not the party’s legal counsel. Once there is evidence that a referral relationship exists, discovery from the law firm may be appropriate, with the trial court balancing the privacy rights of the former patients and clients, and implementing appropriate safeguards. We do not suggest, however, that the law firm may never be a primary source for such discovery where, as here, the doctor has no records or provides nebulous testimony about the doctor’s past dealings with the referring law firm.[4]
On the record before us, we are unable to determine whether GEICO established the existence of a referral relationship between the health care providers and the law firm. At the very least, the health care providers must provide financial bias discovery like that permitted by rule 1.280(b)(5)(A)(iii) as well as any history of referrals between the health care providers and the' law firm. Beyond that, if GEICO can establish that the law firm or health care providers referred plaintiff to the other, more extensive financial bias discovery from both of them may be appropriate. Accordingly, the trial court should not have required the law firm to produce the discovery at issue, as it is premature at this point. We grant the petition and remand this case to the trial court for proceedings consistent with this opinion.

Petition Granted; Order Quashed; Cause Remanded to trial court for proceedings consistent with this opinion.

MAY, C.J., and HAZOURI, J., concur.

. The plaintiffs, law firms, and doctors in cases that have come before this court on related issues have attempted to have it both ways. In order to avoid providing the basic financial bias discovery required by Rule 1.280, they contend that the doctor is purely a treating physician. But, in order to seek to avoid the discovery that would ordinarily be available from a material witness — such as a treating physician — they then contend that the doctor is an expert and that discovery is limited strictly by the rule. Doctors in these circumstances are not exclusively one or the other, and this is why they have been referred to as a "hybrid witness.”. State Farm Mut. Auto. Ins. Co. v. German, 12 So.3d 1286, 1287 (Fla. 5th DCA 2009) (Torpy, J., concurring).

. This subdivision was previously numbered 1.280(b)(4) but was recently renumbered. In re Amendments to Florida Rules of Civil Procedure—Elec. Discovery, 95 So.3d 76, 80 (Fla.2012).

. The rule was drafted with retained experts in mind. E.g. Fla. R. Civ. P. 1.280(b)(4)(A)(iii)(4) (allowing discovery of an approximation of the extent of the expert’s involvement in litigation — such as the “percentage of earned income derived from serving as an expert witness”). In the case of the hybrid witness, the inquiry is not limited to income derived from the doctor acting as an expert. The bias inquiry may look to the percentage of work/income that the doctor derives from treating patients in litigation cases and/or pursuant to referrals.

. Defense counsel and defense experts have long been required to maintain financial records of their business dealings. We see no reason why law firms and doctors who engage in referral activities should not be required to maintain records of their dealings.