LAMBERT, J.
Heather Worley petitions this court for a writ of certiorari to quash the trial court’s order requiring her to produce information pertaining to the relationship between her treating physicians and her attorneys below, Morgan & Morgan, P.A. For the following reasons, we deny the petition.
During the discovery process of this relatively routine trip-and-fall case, Morgan & Morgan has tenaciously opposed all attempts by the Respondent, Central Florida Young Men’s Christian Association, Inc. (‘YMCA”), to learn how Worley became a patient of certain medical care providers. After Worley fell in YMCA’s parking lot, she twice went to the emergency room of Florida Hospital East, where she was eventually advised to see a specialist concerning pain in her right knee. However, according to Worley, she did not go to a specialist for a month or two after the accident because she did not have enough money or any health insurance. Instead, she “started seeking out representation.” After Worley retained Morgan & Morgan, various doctors from Sea Spine Orthopedic Institute, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia treated Worley. Morgan & Morgan subsequently filed a negligence suit against YMCA on behalf of Worley, seeking to recover damages, including the costs of her treatment from those healthcare providers.
During Worley’s deposition, YMCA asked her, generally, how she came to see the specialists who treated her and, specifically, if she was referred to a doctor by her attorneys.- Worley’s counsel objected to both questions on the ground of attorney-client privilege. Following the deposition, on December 4, 2012, YMCA propounded to Worley three sets of Boecher interrogatories and a supplemental request to produce,' attempting to ascertain the extent of the relationship between Morgan & Morgan and Sea Spine, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia.[1] According to YMCA, it has *1243 reason to believe that there is a “cozy agreement” between Morgan & Morgan and the treating physicians in this case due to the unusually high cost of Worley’s medical bills. In this regard, Worley concedes that YMCA has sufficient evidence to argue that the medical bills are unreasonable.
YMCA’s Boecher interrogatories were directed to specific doctors employed by Sea Spine, Underwood Surgery Center, and Sanctuary Surgical <& Anesthesia that treated Worley and who were expected to testify, at trial. In particular, YMCA sought the names of all cases for the last three years in which the doctor or another doctor within the same affiliation treated a Morgan & Morgan client, the total medical bills charged, and the amount paid to any third-party company that purchased the client accounts in those cases. In addition, YMCA requested the names of all cases in which the doctor or another doctor within the same affiliation testified at trial or in a deposition on behalf of a Morgan & Morgan client and the expert fee paid in those cases.
YMCA’s supplemental request to produce was directed to Worley and sought the following two types of information:
1. Complete copies of any and all agreements, arrangements, and understandings regarding referral or treatment of, billing for, protections of bills or any other matter pertaining in anyway to the referral of and the billing for patients between MORGAN & MORGAN, P.A. and/or any of its various attorneys relating to any clients of MORGAN & MORGAN, or its associated attorneys for the last five years.
2. Any and all documents reflecting the amounts received and collected and/or compromised or adjusted for any bills rendered for medical evaluation care and treatment from SEA SPINE ORTHOPEDIC INSTITUTE, UNDERWOOD SURGERY CENTER and SANCTUARY SURGICAL & ANESTHESIA, for the clients of MORGAN & MORGAN, PA. and any of its associated attorneys.
Worley objected to YMCA’s interrogatories and supplemental request to produce, arguing that the discovery requests were “overbroad, vague, unduly and financially burdensome, irrelevant and in violation [of] allowable discovery pursuant to Florida Rule of Civil Procedure 1.280(b)(4).”[2] Further, Worley stated that neither Worley’s counsel, individually, nor Morgan & Morgan “keeps said information for treating physicians as in this matter, or otherwise” and that YMCA can “obtain said information, if any, from the treating physicians at their depositions,” should YMCA choose to depose them. However, according to YMCA, Worley also filed a motion for protective order to prevent YMCA from obtaining this infor *1244 mation from the billing custodians for Worley’s treating physicians. Additionally, when the treating physicians were deposed, they all responded that they were unsure who referred Worley to them, although some believed that Worley might have been referred by Florida Hospital East.
Following a hearing concerning Worley’s deposition objections, the trial court sustained Worley’s objection to the question regarding whether she was referred by her attorneys. However, the trial court overruled all of Worley’s other deposition objections. The court informed YMCA that “[t]he only question that you’re prohibited from asking is whether or not the attorney’s [sic] referred her to the doctor.” The court did not address Worley’s objections to YMCA’s other outstanding discovery requests at that time.
In a second deposition, in conformity with the court’s prior ruling, YMCA again asked Worley how she was referred to her doctor. However, Worley again objected on the ground of attorney-client privilege. Nevertheless, in response to YMCA’s other questions, Worley stated that she was not referred by another doctor, by Florida Hospital East, or by a friend or relative.
YMCA then filed a “Motion to Compel Better Answers to Boecher Interrogatories and Supplemental Request for Production.”[3] Following a second hearing, the trial court entered an order granting in part and denying in part YMCA’s motion. Pursuant to the written order, for the time period between three years prior to and six months after December 4, 2012, Worley was required to produce, within 30 days, two types of discovery materials:
[1] complete copies of any and all documents reflecting formal or informal agreements, arrangements,' and understandings regarding the billing for patients or any direct or indirect referral of a client by any attorney employed by or affiliated with Morgan & Morgan (whether currently or formerly employed by or affiliated with Morgan & Morgan) to any of the following entities or persons: Sea Spine Orthopedic Institute (or its doctors); Underwood Surgery Center (or its doctors); Physicians Surgical Group (or its doctors); and Sanctuary Surgical and Anesthesia (or its doctors), and vice versa[; and]
the names of any and all cases (including plaintiff, defendant, court and case number) where a client was referred directly .or indirectly by any attorney employed by or affiliated with Morgan & Morgan (whether currently or formerly employed by or affiliated with Morgan & Morgan) to any of the following entities or persons: Sea Spine Orthopedic Institute (or its doctors); Underwood Surgery Center (or its doctors); Physicians Surgical Group (or its doctors); and Sanctuary Surgical and Anesthesia (or its doctors), and vice ver-sa.
Although not in the court’s written order, in its oral pronouncement, the court stated that “[i]f the health care provider doesn’t have it, then the law firm is to produce it.” The order did not state which party was to bear the costs of complying with the court’s order.
Importantly, as stated in the court’s order, Worley’s written objections to the financial discovery — including the total medical bills charged and the amount paid to any third-party company that purchased the client accounts, the expert fee paid to the doctors for testifying, and “[a]ny and all documents reflecting the amounts re *1245 ceived and collected and/or compromised or adjusted for any bills rendered for medical evaluation care and treatment from the relevant treating physicians” — were sustained without prejudice. According to the court, it would reconsider this ruling “should a billing or referral agreement, arrangement or understanding, or past referrals be demonstrated between any attorney who is currently or formerly employed by or affiliated with Morgan & Morgan” and the relevant treating physicians.
Worley filed a motion for reconsideration of the court’s order, arguing that the information was protected by attorney-client privilege and that it would be overly burdensome, if not impossible, to comply with the court’s order, inter alia. Attached to the motion was an affidavit by Deborah Parrott, the Chief Financial Officer (“CFO”) of Morgan & Morgan, in which she states that to the best of her knowledge, there are no documents kept or maintained by Morgan & Morgan that address the information sought by YMCA. In the motion and a separate affidavit, Worley’s attorney stated that he has identified 238 “separate, Non-Party legal matters involving Plaintiffs Treating Physicians” and that it would be necessary to expend a minimum of one hour attorney review time for each case “to manually search hard-copy files, in order to compile a list of the information requested in the Defendant’s interrogatories,” at an estimated fee of $94,010.[4] The trial court summarily denied Worley’s motion for reconsideration, and Worley filed the instant petition for writ of certiorari.
In her petition, Worley argues that the trial court’s order is improper for the following six reasons: (1) it requires production of information protected by attorney-client privilege; (2) it requires Worley to produce documents that do not exist; (3) it requires Morgan & Morgan, a nonparty, to produce the information; (4) it requires Worley or Morgan & Morgan to engage in an unduly and financially burdensome production; (5) it requires Morgan & Morgan to incur all of the costs associated with the production of the ordered discovery; and (6) it expands the scope of bias-related discovery that is otherwise permitted.
“[Cjertiorari is the appropriate remedy when a discovery order ‘departs from the essential requirements of law, and thus causes material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal.’ ” Allstate Ins. Co. v. Boecher, 733 So.2d 993, 999 (Fla.1999) (citing Allstate Ins. Co. v. Langston, 655 So.2d 91, 94-95 (Fla.1995)). “In considering a petition for certiorari the reviewing court’s first duty is to assess whether the petitioner has made a prima facie showing that the order creates irreparable harm. If the petitioner does not make such a showing, the court lacks jurisdiction and will dismiss the petition.” Morgan, Colling & Gilbert, P.A. v. Pope, 798 So.2d 1, 3 (Fla. 2d DCA 2001) (citing Bared & Co. v. McGuire, 670 So.2d 153, 157 (Fla. 4th DCA 1996) (en banc)). If the petitioner has made a prima facie showing that the order creates irreparable harm, the reviewing court will then determine whether the petitioner has made a prima facie showing that the order departs from the essential requirements of law. McGuire, 670 So.2d at 157. If not, the reviewing court will deny the petition. See id.
*1246 In the instant case, at least with respect to Worley’s first argument (that the order requires production of information protected by attorney-client privilege), we find that Worley has made a prima facie showing that the order creates irreparable harm. See Omega Consulting Grp., Inc. v. Templeton, 805 So.2d 1058, 1059 (Fla. 4th DCA 2002) (“Certiorari lies to review trial court orders compelling production of discovery claimed to be subject to the attorney-client privilege, since such disclosure presents the potential departure from the essential requirements of law that would cause material harm for which there is no adequate remedy on final appeal.” (citing Langston, 655 So.2d at 94; Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., 715 So.2d 1021, 1022 (Fla. 4th DCA 1998))); Snyder v. Value Rent-A-Car, 736 So.2d 780, 781 (Fla. 4th DCA 1999). The next. issue we address is whether the order departs from the essential requirements of law.
In general, “[pjarties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action.... ” Fla. R. Civ. P. 1.280(b)(1). In Florida, it is well established that the financial relationship between the law firm and the treating physician is not privileged and is relevant to show potential bias. See Brown v. Mittelman, 152 So.3d 602, 604 (Fla. 4th DCA 2014) (“The financial relationship between the treating doctor and the plaintiffs attorneys in present and past cases creates the potential for bias and discovery of such a relationship is permissible.”); Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay, 133 So.3d 1178, 1178 (Fla. 4th DCA 2014) (“A law firm’s financial relationship with a doctor is discoverable on the issue of bias.” (citing Pope, 798 So.2d at 2)); Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co., 103 So.3d 200, 204 (Fla. 4th DCA 2012) (“Thus, under ordinary circumstances, a defendant may discover from a plaintiffs treating physician the type of general financial bias information set out in Rule 1.280(b)(5) (A) (iii).”); Katzman v. Rediron Fabrication, Inc., 76 So.3d 1060, 1064 (Fla. 4th DCA 2011) (“We agree that Elkins discovery should generally provide sufficient discovery into such financial bias. The discovery here is relevant to a discrete issue, whether the expert has recommended an allegedly unnecessary and costly procedure with greater frequency in litigation cases, and whether the expert, as a treating physician, allegedly overcharged for the medical services at issue in the lawsuit ”[5]); see also Crawford v. McColister’s Transp. Sys., Inc., No. 13-60402-CIV, 2013 WL 5687861, at *2 (S.D.Fla. Oct. 2, 2013) (stating that “the existence of an attorney client relationship is not usually itself privileged, and whether a Plaintiff was referred to a physician by her attorney is discoverable” (footnote omitted) (citing Norfolk v. Comparato, No. 11-81120-CIV, 2012 WL 3055675 (S.D.Fla. July 12, 2012))).
However, to protect the privacy interests of the treating physicians and their former patients, before overly-intrusive financial bias information concerning a treating physician’s relationship with a plaintiffs law firm is discoverable, there must be some evidence of a referral relationship. See Fla. R. Civ. P. 1.280(b)(5)(A) (“An expert may be required to produce financial and business records only under the most unusual or compelling circum *1247 stances and may not be compelled to compile or produce nonexistent documents.”); Brown, 152 So.3d at 605 (“Similar to the protections afforded to retained experts under rule 1.280(b), we have recognized that a treating physician witness should be protected from overly-intrusive financial discovery.... This does not mean that all relationships between law firms and treating doctors can be kept hidden from scrutiny. In cases where there is evidence of a referral relationship, more extensive financial discovery may be appropriate from both the law firm and the doctor.” (citation omitted)); Steinger, 103 So.3d at 206 (“Once there is evidence that a referral relationship exists, discovery from the law firm may be appropriate, with the trial court balancing the privacy rights of the former patients and clients, and implementing appropriate safeguards.”); Winn-Dixie Stores, Inc. v. Miles, 616 So.2d 1108, 1110 (Fla. 5th DCA 1993) (“Absent some sort of basis for suspecting that [the treating physician] is biased, [the party seeking discovery] should not be allowed to engage in an extensive fishing expedition which may prove worthless.”).
To establish that a referral has occurred, discovery “should first be sought from the party, the treating doctor, or other witnesses — not the party’s legal counsel.” Steinger, 103 So.3d at 206. Here, YMCA has taken the appropriate steps and has exhausted its inquiry as to how Worley was referred to the treating physicians in this case. All treating doctors have been deposed and were unsure if or by whom Worley was referred. In her second deposition, Worley confirmed that she was not referred by Florida Hospital East, by another doctor, or by a friend or relative. There is no indication that any other witness would have such knowledge. Thus, in order to establish that a referral has occurred, YMCA had no choice but to ask Worley herself. See id.
In Burt v. Government Employees Insurance Co., 603 So.2d 125 (Fla. 2d DCA 1992), the Second District Court held that the question, “[D]id counsel refer her to a particular physician[?]” sought “discovery of confidential communications constituting her attorney’s advice regarding this lawsuit.” 603 So.2d at 125-26. Although the trial court’s preliminary ruling-that prohibited YMCA from asking “whether or not the attorney’s [sic] referred her to the doctor” was supported by Burt,[6] we believe that the broad holding in Burt has been called into doubt by the subsequent case law approving discovery pertaining to the financial relationship between a plaintiffs treating physician and his or her lawyer(s).[7] See, e.g., Brown, 152 So.3d at 604; Malay, 133 So.3d at 1178; Steinger, 103 So.3d at 204; Katzman, 76 So.3d at 1064; Pope, 798 So.2d at 2. As the Florida Supreme Court stated in Boecher, due to the highly relevant nature of this information, “[a]ny limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process.” 733 So.2d at 998. Having exhausted all other avenues without success, we find — contrary to the trial court’s preliminary ruling and to Burt — that it was appropriate for YMCA to ask Worley if she was referred *1248 to the relevant treating physicians by her counsel or her counsel’s firm.
Nevertheless, we believe that the trial court’s order at issue is consistent with the purpose and policy announced in Boecher. The order required Worley to produce “the names of any and all cases (including plaintiff, defendant, court and case number) where a client was referred directly or indirectly by any [Morgan <& Morgan] attorney” to the relevant treating physicians in this case, which necessarily includes information on whether Worley was referred by Morgan & Morgan. Based on the aforementioned case law, we conclude that this aspect of the order does not depart from the essential requirements of law, especially considering YMCA has sufficiently demonstrated a good-faith basis for suspecting that a referral relationship exists.[8]
We also find no error with respect to the court’s order requiring Worley to produce “any and all documents reflecting formal or informal agreements, arrangements, and understandings regarding the billing for patients or any direct or indirect referral of a client by any attorney employed by or affiliated with Morgan & Morgan” to any of the treating physicians in this case. As an initial matter, we distinguish this type of discovery from the detailed financial discovery that is prohibited absent a preliminary showing of a referral relationship. Unlike detailed financial and business records that could reveal confidential information protected by the doctor-patient privilege, the limited type of discovery presently at issue here concerns only the existence of a referral relationship between Morgan & Morgan and the treating physicians in this case. As stated earlier, this type of information is relevant, not privileged,[9] and essential to the truth-seeking function of the court system. Moreover, because the information was ordered to be produced by Worley and her attorneys, rather than the doctors *1249 themselves, the information is not entitled to special protection under Florida Rule of Civil Procedure 1.280(b)(5)(A). Importantly, in the order at issue, the trial court sustained without prejudice Morgan & Morgan’s objection to all other financial discovery information.[10] Thus, in regard to either type of discovery at issue, we find that the trial court’s order did not depart from the essential requirements of law.
With respect to Worley’s remaining arguments, we find that she has not made a prima facie showing of irreparable harm or of a departure from the essential requirements of law, or both. Based on the unre-futed affidavit of Morgan & Morgan’s CFO and the court’s order requiring Worley to produce “any and all documents reflecting formal or informal agreements” or referrals between Morgan & Morgan and the treating physicians in this case, Worley’s second argument is that she is being ordered to produce nonexistent documents, which is generally impermissible. See Allstate Ins. Co. v. Pinder, 746 So.2d 1255, 1256-57 (Fla. 5th DCA 1999). Contrary to Worley’s interpretation of the order, however, we interpret the court’s language to mean that if “any” documents exist, then Worley must produce them. Of course, if no documents exist, Worley may state as much, and her obligation to produce the first type of discovery under the court’s order would be satisfied.
Worley’s third argument is that the order improperly requires Morgan & Morgan, a nonparty, to produce the information. In Steinger, the court stated that a law firm may be a primary source of such discovery when “the doctor has no records or provides nebulous testimony about the doctor’s past dealings with the referring law firm.”[11] 103 So.3d at 206. Here, after reviewing the record, we find that the doctors have provided nebulous testimony about their past dealings with the referring law firm. As a result, it was proper to conditionally require Morgan & Morgan to produce the discovery if Worley cannot. See id. As for Worley, she can of course seek the information from Morgan & Morgan if necessary. Cf. Crawford, No. 13-60402-CIV, 2013 WL 5687861, at *2 (stating that a party may not avoid answering an interrogatory question “if the information is available to her, or under her control” (citing Essex Builders Grp., Inc. v. Amerisure Ins. Co., 230 F.R.D. 682, 685 (M.D.Fla.2005))).
Worley’s fourth and fifth arguments concern the burdensomeness and the costs to comply with the court’s order. The fact that the order does not include a provision for costs and that the order may be overly burdensome to comply with does not prevent Worley from seeking reasonable compensation for those costs at the end of the case. See Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1200, 1200 n. 5 (Fla. 4th DCA 2000) (quoting Haines City Comm. Dev. v. Heggs, 658 So.2d 523, 531 (Fla.1995)); see also Fla. R. Civ. P. 1.280(b)(5)(C) (“Unless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions *1250 (b)(5)(A) and (b)(5)(B) of this rule-”). To hold otherwise would essentially thwart the truth-seeking function highlighted in Boecher because it would allow a party to prevent disclosure of relevant information by arguing that it is too costly to provide, even though the greater the extent of the relationship between the party’s law firm .and the treating physicians, the more likely the opposing party could successfully argue bias or the unreasonableness of the medical bills charged by the treating physicians. See Boecher, 733 So.2d at 997 (“The more extensive the financial relationship between a party and a witness, the moré it is likely that the witness has a vested interest in that financially beneficial relationship continuing.”).
Worley’s last argument is that the order improperly expands the scope of bias-related discovery that is otherwise permissible after Boecher. This argument was implicitly rejected in our analysis of Worley’s first argument and is explicitly rejected now. In sum, the order at issue is essentially requiring Worley to produce information regarding the referral relationship between her attorneys and her treating physicians, which is directly relevant to the potential bias of the physicians. It does not require production of any records regarding the money exchanged between Morgan & Morgan and the physicians. In general, defense attorneys are entitled to seek discovery concerning the existence of a referral relationship between opposing counsel and the plaintiffs treating physician(s), especially when there is some indication in the record that the fees charged by the physician(s) are possibly inflated.
Accordingly, we deny Worley’s petition. In addition, we certify conflict with Burt v. Government Employees Insurance Co., 603 So.2d 125 (Fla. 2d DCA 1992), to the extent that it holds that the disclosure of a referral of a client by an attorney to a healthcare provider is always protected by attorney-client privilege.
PETITION DENIED; CONFLICT CERTIFIED.
PALMER and BERGER, JJ., concur.

. In Allstate Insurance Co. v. Boecher, 733 So.2d 993 (Fla.1999), the Florida Supreme Court held that a party may propound discovery requests "directly to a party regarding the extent of that party’s use of and payment to a particular expert.” 733 So.2d at 993-94. The holding in Boecher has since been extended by subsequent cases to apply to treating *1243 physicians who are expected to provide an expert opinion at trial. See, e.g., Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co., 103 So.3d 200, 203 (Fla. 4th DCA 2012) ("For purposes of uncovering bias, we see no meaningful distinction between a treating physician witness, who also provides an expert opinion (the so-called ‘hybrid witness'), and retained experts.”); State Farm Mut. Auto. Ins. Co. v. German, 12 So.3d 1286, 1287 (Fla. 5th DCA 2009) (Torpy, J., concurring) ("[A] treating physician who devotes a substantial portion of his or her practice to expert testimony on behalf of plaintiffs might have a bias towards plaintiffs just as a retained expert, and inquiry at trial to expose that potential bias is permitted. It logically follows that pretrial discovery is permissible to uncover evidence of bias for all the same reasons that discovery on any trial issue is permitted.”).

. Florida Rule of Civil Procedure 1.280(b)(5), formerly rule 1.280(b)(4), governs the discovery of facts known and opinions held by expert witnesses.

. Other than Worley’s written objections to YMCA's discovery requests, there was no response to YMCA's Boecher interrogatories or YMCA's supplemental request for production.

. The estimated fee was calculated based on the attorney's rate of $395.00 per hour multiplied by the 238 hours that counsel stated under oath it would take to review the 238 separate files.

. In Syken v. Elkins, 644 So.2d 539, 546 (Fla. 3d DCA 1994), the Third District Court of Appeal set forth eight criteria to be followed in seeking financial information from opposing medical experts. In Elkins v. Syken, 672 So.2d 517, 522 (Fla.1996), the Florida Supreme Court found that the criteria set forth by the district court was "proper.”

. We note that the trial court was bound to follow Burt. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992) (stating that “in the absence of interdistrict conflict, district court decisions bind all Florida trial courts” (citing Weiman v. McHaffie, 470 So.2d 682, 684 (Fla.1985))).

. If more-detailed financial discovery concerning the relationship between a treating physician and the plaintiff’s law firm is permissible upon a showing that a referral relationship exists, it follows that discovery seeking to establish that a referral relationship exists is permissible as well.

. Defense counsel and insurance companies are routinely required to disclose the names of cases in which they referred a plaintiff to a specific doctor for a compulsory medical examination ("CME”) under Florida Rule of Civil Procedure 1.360. If the tables were turned and if there was evidence showing that YMCA or its counsel had used the same doctor to conduct CMEs in 238 cases over the last three years, there is no question that, pursuant to Boecher, the extent of YMCA’s or its counsel’s relationship with the doctor would be generally discoverable. We see no meaningful difference between requiring defense counsel or insurers to disclose this information and requiring Worley or her counsel to disclose the clients that have been referred by Morgan & Morgan to the healthcare providers in this case.

. To the extent that Morgan & Morgan can identify specific material that may still be protected by attorney-client privilege, Morgan & Morgan is entitled to object in accordance with Florida Rule of Civil Procedure 1.280(b)(6), and the trial court may take appropriate measures at that time. See Fla. R. Civ. P. 1.280(b)(6) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.”); Steinger, 103 So.3d at 203 (quoting the trial court’s order, which stated that ”[a]ny documents subject to privilege objections were to be produced under seal with a privilege log provided to the court”); Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1198 n. 1 (Fla. 4th DCA 2000) ("There was also an objection that some documents requested are privileged, but the trial court has ordered a privilege log as to such documents and directed that they be produced under seal, apparently for in camera inspection to ascertain the validity of the claim of privilege.”).

. As a result, the issue of whether YMCA is permitted to obtain discovery concerning the financial relationship between Morgan & Morgan and the relevant treating physicians in this case if a referral relationship is shown to exist is not before us.

. In a footnote, the court added, "Defense counsel and defense experts have long been required to maintain financial records of their business dealings. We see no reason why law firms and doctors who engage in referral activities should not be required to maintain records of their dealings.” Steinger, 103 So.3d at 206 n. 4.