POLSTON, J.,
dissenting.
The majority holds that Central Florida YMCA is shielded, based on attorney-client privilege, from discovering whether Worley’s lawyers, Morgan & Morgan, referred her to treating medical providers. The discovery is directed to the referral relationship between Morgan & Morgan and the providers, including how much money the providers received from the firm and its clients. The financial relationship between a law firm and medical provider, including number of referrals, frequency, and financial benefit, is admissible evidence regarding the bias of a testifying medical provider. -Accordingly, this information is relevant and subject to discovery.
The trial court ordered Worley to produce billing agreements between Morgan & Morgan and her treating medical providers and information from cases in which her firm referred other clients. On appeal, the Fifth District Court of Appeal in Worley v. Central Florida Young Men’s Christian Ass’n, Inc., 163 So.3d 1240 (Fla. 5th DCA 2015), correctly allowed discovery of this information under the existing rules of discovery, as balanced with other interests.. I would approve its excellent analysis.
A lawyer’s referral, of a client to a treating medical provider is for the purpose of *27 the client’s medical care, not in furtherance of legal services. Therefore, the referral itself is not protected as an attorney-client privileged communication.
I respectfully dissent.
I. Background
Worley was injured in a slip and fall at Central Florida YMCA. Id at 1242. The Fifth District explained that “[djuring the discovery process of this relatively routine trip-and-fall case, Morgan & Morgan has tenaciously opposed all attempts by the Respondent, Central Florida" Young Men’s Christian Association, Inc. (“YMCA”), to learn how Worley became a patient of certain medical care providers.” Id Specifically, YMCA seeks to discover information regarding the referral relationship between Morgan & Morgan and Worley’s treating providers at Sea Spine Orthopedic Institute, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia, including the amounts paid for clients of Morgan & Morgan. Id at 1242-43. These treating providers will be giving expert opinions on matters including permanency of the injury as well as the reasonableness and necessity of her care and treatment.
YMCA contends, and' has throughout the litigation, that these providers’ bills are grossly inflated and do not reflect usual and customary billing practices within the medical community. ‘Worley concedes that YMCA has sufficient evidence to argue, that the medical bills [from the treating physicians in this case] are unreasonable.” Id. at 1243. As the majority states, “a Sea Spine employee testified during depositions that at the time of Worley’s treatment, its entire practice was based on patients treated pursuant to LOPs,” meaning letters of protection from lawyers. Majority op. at 24.
In response to the requested discovery, Worley’s counsel provided an affidavit indicating that 238 Morgan & Morgan “Non-Party legal matters [involve Worley’s] Treating Physicians.” Worley, 163 So.3d at 1245. However, Worley’s counsel indicated that the specific requested information is not. kept by Morgan & Morgan, and YMCA could obtain the information from the providers. Id. Then, “according to YMCA, Worley also filed a motion for protective order to prevent YMCA from obtaining this information from the billing custodians for Worley’s treating physicians.” Id. at 1243-44.
Worley objects to the' discovery of whether Morgan & Morgan referred her to these medical providers based on attorney-client privilege. The Fifth District ruled this was not protected information subject to the attorney-client privilege:
In general, “[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action. ...” Fla. R. Civ. P. 1.280(b)(1). In Florida, it is well established that the financial relationship between the law firm and the treating physician is not privileged and is relevant to show potential bias. See Brown v. Mittelman, 152 So.3d 602, 604 (Fla. 4th DCA 2014) (“The financial relationship between the treating doctor arid the plaintiffs attorneys in present and past cases creates the potential for bias and discovery of such a relationship is permissible.”); Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay, 133 So.3d 1178, 1178 (Fla. 4th DCA 2014) ..(“A law firm’s financial relationship with a doctor is discoverable on the issue of bias.” (citing [Morgan, Colling & Gilbert, P.A. v. ]Pope, 798 So. 2d [1, 2 (Fla. 2d DCA 2001) ])); Steinger, Iscoe & Greene, P.A. v. GEICO, Gen. Ins. Co., 103 So.3d 200, 204 (Fla. 4th DCA 2012) (“Thus, under ordinary circumstances, a defendant may discover from a, plaintiffs treating physician the type of general *28 financial bias information set out in Rule 1.280(b)(5)(A)(iii).”); Katzman v. Rediron Fabrication, Inc., 76 So.3d 1060, 1064 (Fla. 4th DCA 2011) (“We agree that Elkins discovery should generally provide sufficient discovery into such financial bias. The discovery here is relevant to a discrete issue, whether the expert has recommended an allegedly unnecessary and costly procedure with greater frequency in litigation cases, and whether the expert, as a treating physician, allegedly overcharged for the medical services at issue in the, lawsuit.”); see also Crawford v. McColister’s Transp. Sys., Inc., 2013 WL 5687861, at *2 (S.D. Fla. Oct. 2, 2013) (stating that “the existence of an attorney client relationship is not usually itself privileged, and whether a Plaintiff was referred to a physician by her attorney is discoverable” (footnote omitted) (citing Norfolk v. Comparato, No. 11-81220-CIV, 2012 WL 3055675 (S.D. Fla. July 12, 2012))).
Id. at 1246 (footnote omitted).
The majority incorrectly rules otherwise and broadly holds that the attorney-client privilege protects the disclosure of whether the attorney referred the client to their physician for treatment.
II.. Evidence and Discovery Rules Require Discovery
Under our evidence and discovery rules, information reasonably calculated to lead to the discovery of the bias of a witness, including a financial incentive for testifying a certain way, should be discoverable. Specifically, this Court has explained that “[o]ur rules of civil procedure broadly allow parties to obtain discovery of ‘any matter, not privileged, that is relevant to the subject matter of the pending action,’ whether the discovery would be admissible at trial, or is merely ‘reasonably calculated to lead to the discovery of admissible evidence.’ ” Allstate Ins. Co. v. Boecher, 733 So.2d 993, 995 (Fla. 1999) (quoting Fla. R. Civ. P. 1.280(b)(1)).
Furthermore, as Professor Ehrhardt explains, “[a]ll witnesses who testify during a trial place their credibility in issue.” Charles W. Ehrhardt, Florida Evidence, § 608.1, at 619 (2016). Therefore, “[r]e-gardless of the subject matter of the witness’s testimony, a party on cross-examination may inquire into matters that affect the truthfulness of the witness’s testimony.” Id. And section 90.608, Florida Statutes, provides that “[a]ny party, including the party calling the witness, may attack the credibility of a witness by ... [showing that the witness is biased.” “Included within the types of matters that demonstrate bias are those that relate to the interest of the witness, favoritism, and corruption.” Ehrhardt, § 608.5, at 655.
The majority acknowledges that the evidence code allows a party to attack a witness’s credibility based on bias and that a treating physician is subject to impeachment based on bias. See majority op. at 23 (citing § 90.608(2), Fla. Stat., and Steinger, 103 So.3d at 203). But the majority then improperly draws the- line of allowing bias to be shown by permitting only evidence of a letter of protection from the lawyer “which may demonstrate that the physician has an interest in the outcome of the litigation.” Id. at 23. This letter of protection involves just the one case. Allowing the jury to consider just this limited financial interest of the one case completely ignores, and improperly limits, the ability to show bias of a provider that may arise from a potentially very significant amount of compensation, and percentage of total business, from other cases brought to the provider by the law firm.
Additionally, the majority reasons that allowing discovery into a broader relationship between the physician and plaintiffs law firm may require production of com *29 munications and materials ' that are protected by attorney-client privilege. See id. at 23-24. Indeed,- section 90.502(2) provides that “[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications ... because they were made in the rendition of legal services to the client.” However, as Professor Ehrhardt explains, “communications that do not involve legal advice are not protected.” Ehrhardt, § 502.5,. at. 451. Therefore, if a communication is a recommendation of a physician from whom someone should seek medical treatment, the referral does not constitute protected legal advice. See Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, 458 (Fla. 5th DCA 1999) (“Mere attendance of an attorney at a meeting, even where the meeting is held at the attorney’s instance, does not render everything said or done at that meeting privileged, For communications at a meeting to be privileged, they must relate to the acquisition or rendition of professional legal services and must have a confidential character.” (citation omitted)); Watkins v. State, 516 So.2d 1043, 1046 (Fla. 1st DCA 1987) (holding that communication regarding trial dates was not privileged because it was not intended to not be disclosed to third parties); see also Ehrhardt, § 502.5, at 449 (“Matters which are not communications, e.g., how cotinsel was retained, are not protected by the attorney-client privilege.”).
Moreover, the possibility of a matter involving attorney-client privileged information of course occurs with all discovery and is not a basis for completely disallowing permissible discovery. Instead, appropriate objections are made and an in camera review- is conducted by the trial judge. See, e.g., Patrowicz v. Wolff, 110 So.3d 973, 974 (Fla. 2d DCA 2013); Zanardi v. Zanardi, 647 So.2d 298, 298 (Fla. 3d DCA 1994).
III. Boecher Requires this Discovery
Importantly, this Court in Boecher, 733 So.2d at 994, required the disclosure of a financial relationship between a party insurance company and its witness. This Court explained that “[o]nly when ah relevant, facts are before the judge'and jury can the ‘search for truth and justice’ be accomplished.” Id. at 995 (quoting Dodson v. Persell, 390 So.2d 704, 707 (Fla. 1980)). Obviously, for all the following reasons, this information establishing a financial relationship between the insurance company and its withess pertains to the bias of the witness and is discoverable:
The information sought here would repeal how often the expert testified on Allstate’s behalf and how much money the expert made from its relationship with -Allstate. The information sought in this case does not just lead to the discovery of admissible information. The information requested is directly relevant to a party’s efforts to demonstrate to the jury the witness’s bias.
The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial-relationship continuing. A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness’s financial incentive to continue the financially advantageous relationship.
Any limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process. As we observed in [Government Employees Insurance Co. v. ]Krawzak, [675 So.2d 115, 118 (Fla. 1996),] we take a “strong stand *30 against charades in trials.” []. To limit this discovery would potentially leave the jury with a false impression concerning the extent of the relationship between the witness and the party by allowing a party to present a witness as an independent witness when, in fact, there has been an extensive financial relationship between the party and the expert.. This limitation thus has. the potential for undermining the truth-seeking function and fairness of the trial. See Dosdourian[ v. Carsten], 624 So. 2d [241, 243 (Fla. 1993) ]. Thus, we conclude that the jury’s right to assess the potential bias of the expert outweighs any of the competing interests expressed in Elkins.
Id. at 997-98.
The majority distinguishes Boecher on the basis that the law firm is not a party to the litigation. Majority op. at 23. However, for all of the reasons described in Boecher, this Court should require the disclosure of a financial relationship between a party’s law firm and its witnesses. It should treat the-. plaintiff s law firm, the same as an insurance company for purposes of discovering and disclosing potential bias. .If a law firm routinely refers clients to the medical provider, and there is an. “extensive [] financial relationship between a party [through its law firm] and.a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing.” Boecher, 733 So.2d at 997. The insurance company is a repeat player in the judicial system, and the witnesses it uses on a regular basis may have a financial incentive that a jury is entitled to know about and evaluate for potential bias. Substitute the phrase “plaintiffs law firm” in place of “insurance company,” and the same is true here: The “plaintiffs law firm” is a repeat player in the. judicial system, and the witnesses it uses on a regular basis may have a financial incentive that a jury is entitled to know about and evaluate for. potential bias. See Sears v. Rutishauser, 102 Ill.2d 402, 80 Ill.Dec. 758, 466 N.E.2d 210, 214 (1984) (“[A] medical expert may be cross-examined'concerning the number and frequency of referrals from an attorney.”).
Accordingly, this Court should apply Boecher in an even-handed manner to all litigants, no matter whether they are plaintiffs or defendants, and require this discovery.[6]
IV. Kitchen Sink
The majority also finds in favor of Wor-ley for a variety of additional reasons, including that the ordered discovery is unduly burdensome. Majority op. at 25. The trial court denied this burdensome claim. As indicated by the Fifth District, Worley may seek reasonable compensation for her costs at the end of the case. Worley, 163 So.3d at 1249; see Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1200 n.5 (Fla. 4th DCA 2000) (“Of course the mere fact that a trial judge has allowed burdensome discovery to proceed does not forestall later reallocation of the costs incurred when the prevailing party seeks to tax costs at the end of the case. In taxing costs, the" trial judge has considerable discretion and it is certainly within such discretion to determine at the end of the case that overly burdensome discovery requests by the losing party should be compensated to some extent by allowing specific requests for costs incurred thereby. It will be at this stage that the parties can have full review of the issues dealing with the allocation of *31 those costs.”). “To hold otherwise would essentially thwart the truth-seeking function highlighted in Boecher because it would allow a party to prevent disclosure of relevant information by arguing that it is too costly to provide, even though the greater the extent of the relationship between the party’s law firm and the treating physicians, the more likely the opposing party could successfully argue bias or the unreasonableness of the medical bills charged by the treating physicians.” Worley, 163 So.3d at 1250.
Additionally, the majority expresses its concern that the ordered discovery will have a chilling effect on doctors willing to testify. Majority op. at 26. However, this concern is without any supporting evidence. To the contrary, as indicated in the majority’s opinion, the physicians, group testified in this case that its whole practice is. dependent on attorney letters of protection. ,
Finally, the majority worries that the costs of litigation will go to the point that some plaintiffs will be denied access to courts because lawyers will not take the cases and advance costs.. Id. But this access to courts worry is completely baseless. Morgan & Morgan has not made any indication that it would not pursue this case or any others if required to comply with the court’s discovery order.
Accordingly, the myriad other reasons the majority employs to prevent the permissible discovery in this case are baseless and without merit.
Y. Conclusion
Because the discovery ordered by the trial court is not attorney-client privileged communication, and because the discovery is required by an evenhanded application of this Court’s decision in Boecher, I would approve the Fifth District’s decision. Therefore, I respectfully dissent.
CANADY and LAWSON, JJ., concur.

, The majority also distinguishes Boecher on the basis that these are treating physicians ráther than experts. Majority op. at 23, But these treating providers will be giving expert opinions, including expert opinions about permanency of the injury as well as the reasonableness and-necessity of her care and treatment.